UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-80006-CR-MARRA/MCCABE

18 U.S.C. § 1349
18 U.S.C. § 982

FILED BY  MP  D.C.

Jan 16, 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

UNITED STATES OF AMERICA

v.

ANTHONY VESPUCCI,

      Defendant.
_____/

## INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At all times material to this Information:

### The Medicare Program

1. The Medicare Program ("Medicare") was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2. Medicare was subdivided into multiple program "parts." Medicare Part A covered health services provided by hospitals, skilled nursing facilities, hospices, and home health agencies. Medicare Part B covered physician services and outpatient care, including an

individual's access to durable medical equipment ("DME"), such as orthotic braces (*e.g.*, knee braces, back braces, shoulder braces, ankle braces, and wrist braces) and wheelchairs. Medicare Part C, also known as the "Medicare Advantage" Program, provided Medicare beneficiaries with the option to receive their Medicare benefits through private managed health care plans, including health maintenance organizations and preferred provider organizations.

3. Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

### Medicare Enrollment and Coverage for Durable Medical Equipment

4. DME suppliers, physicians, and other health care providers that provided services to Medicare beneficiaries were referred to as Medicare "providers." To participate in Medicare, providers were required to submit an application, CMS Form 855S, signed by an authorized representative of the provider. CMS Form 855S contained a certification that stated:

> I agree to abide by the Medicare laws, regulations and program instructions that apply to [the provider]. The Medicare laws, regulations, and program instructions are available through the fee-for-service contractor. I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions (including, but not limited to, the Federal Anti-Kickback Statute...).

5. CMS Form 855S contained additional certifications that the provider "will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare," and "will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity."

6. If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number." A provider with a Medicare provider number could file claims with Medicare to obtain reimbursement for services rendered to beneficiaries.

7. Medicare reimbursed DME suppliers and other providers for items and services rendered to beneficiaries. To receive payment from Medicare, providers submitted or caused the submission of claims to Medicare electronically, either directly or through a billing company.

8. A Medicare claim for DME reimbursement was required to set forth, among other things, the beneficiary's name and unique Medicare identification number, the DME provided to the beneficiary, the date the DME was provided, the cost of the DME, and the name and unique physician identification number of the physician who prescribed or ordered the equipment.

9. Medicare would only pay for services that were medically reasonable and necessary, eligible for reimbursement, and provided as represented. Medicare would not pay claims for services that were procured through the payment of illegal kickbacks and bribes.

### Telemedicine

10. Telemedicine provided a means of connecting patients to doctors by using telecommunications technology, such as the internet or telephone, to interact with a patient.

11. Telemedicine companies provided telemedicine services, or telehealth services, to individuals by hiring doctors and other providers. Telemedicine companies typically paid doctors a fee to conduct consultations with patients. In order to generate revenue, telemedicine companies typically either billed insurance or received payment from patients who utilized the services of the telemedicine company.

12. Medicare Part B covered expenses for specific telehealth services if certain requirements were met. These requirements included that: (a) the beneficiary was located in a rural or health professional shortage area; (b) services were delivered via an interactive audio and video telecommunications system; and (c) the beneficiary was in a practitioner's office or a

specified medical facility—not at a beneficiary's home—during the telehealth service with a remote practitioner.

13. In or around March 2020, in response to the COVID-19 pandemic and in order to enable access to care during the public health emergency, some of these requirements were amended temporarily to, among other things, cover telehealth services for certain office and hospital visits, even if the beneficiary was not located in a rural area or a health professional shortage area and even if the telehealth services were furnished to beneficiaries in their home.

### The Defendant, Related Entities, and Relevant Persons

14. Defendant **ANTHONY VESPUCCI** ("**VESPUCCI**") was a resident of Palm Beach County, in the Southern District of Florida, during the conspiracy alleged herein.

15. Unity Medical Consultants LLC ("Unity") was a company formed under the laws of Florida with a principal address of 2755 South Federal Highway, Suite 10, Boynton Beach, Florida 33435, in Palm Beach County. **VESPUCCI** was an owner of Unity.

16. Chilson Holdings, LLC ("Chilson") was a company formed under the laws of Florida with a principal address of 2755 South Federal Highway, Suite 20, Boynton Beach, Florida 33435, in Palm Beach County. **VESPUCCI** was an owner of Chilson.

17. Clayton Supply Resource, LLC ("Clayton") was a DME company formed under the laws of Florida with a principal address of 8401 Lake Worth Road, Suite 232, Lake Worth, Florida 33467, in Palm Beach County. **VESPUCCI** was the owner of Clayton.

18. Eric Ginsberg ("Ginsberg") was a resident of Palm Beach County, in the Southern District of Florida, and an owner of DME companies.

19. Christopher Rascionato ("Rascionato") was a resident of Palm Beach County, in the Southern District of Florida, and an owner of DME companies.

## COUNT 1
### Conspiracy to Commit Health Care Fraud
### (18 U.S.C. § 1349)

1. The General Allegations section of this Information is re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around August 2018, and continuing through in or around July 2021, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant,

**ANTHONY VESPUCCI,**

did knowingly and willfully, that is, with the intent to further the object of the conspiracy, combine, conspire, confederate, and agree with Christopher Rascionato, Eric Ginsberg, and others known and unknown to the United States Attorney, to commit offenses against the United States, that is, to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

### Purpose of the Conspiracy

3. It was a purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by, among other things: (a) paying and receiving kickbacks and bribes in exchange for the referral of Medicare beneficiaries for DME, without regard to whether the beneficiaries needed the DME or whether the DME was eligible for reimbursement by Medicare; (b) paying kickbacks and bribes to purported telemedicine and marketing companies in exchange for doctor's orders for DME, without regard to whether the beneficiaries needed the

DME or whether the DME was eligible for reimbursement by Medicare; (c) submitting and causing the submission of false and fraudulent claims to Medicare for DME that was medically unnecessary and ineligible for reimbursement; (d) concealing the submission of false and fraudulent claims to Medicare; and (e) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

## Manner and Means of the Conspiracy

The manner and means by which the defendant and his co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things:

4. **VESPUCCI**, through Unity and Chilson, operated call centers that targeted Medicare beneficiaries and used deceptive telemarketing techniques to induce the Medicare beneficiaries to accept medically unnecessary orthotic braces.

5. **VESPUCCI** paid illegal kickbacks and bribes to purported telemedicine companies in exchange for doctors' orders for DME, knowing that the doctors' orders were medically unnecessary because they did not result from a valid doctor-patient consultation.

6. **VESPUCCI** solicited and received illegal kickbacks and bribes from DME supply companies and marketing companies owned by Rascionato, Ginsberg, and others in exchange for referring the doctors' orders for orthotic braces that were medically unnecessary and ineligible for reimbursement by Medicare. Rascionato and Ginsberg, through their DME companies, in turn billed Medicare for the DME.

7. **VESPUCCI**, on behalf of Unity and Chilson, concealed and disguised the scheme, including by issuing sham invoices that falsely represented that Unity and Chilson were being paid for hourly marketing services rather than beneficiary referrals, including completed doctors' orders.

8. **VESPUCCI** caused Clayton and DME companies that purchased beneficiary referrals, including completed doctors' orders, from Unity and Chilson to submit approximately $7,411,927 in false and fraudulent claims to Medicare, of which Medicare paid approximately $3,705,963, for orthotic braces that were medically unnecessary, ineligible for reimbursement, and procured through illegal kickbacks and bribes.

9. **VESPUCCI** and his co-conspirators used the fraud proceeds to benefit themselves and others, and to further the fraud.

All in violation of Title 18, United States Code, Section 1349.

## **FORFEITURE ALLEGATIONS**

1. The allegations of this Information are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **ANTHONY VESPUCCI**, has an interest.

2. Upon conviction of a violation of Title 18, United States Code, Section 1349, as alleged in this Information, the defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7).

3. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without

difficulty;

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 982(a)(7), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1).

*[signature]*
MARKENZY LAPOINTE
UNITED STATES ATTORNEY

GLENN S. LEON, CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

*[signature]*
ANDREA SAVDIE
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO.: _____

v.

ANTHONY VESPUCCI,

**CERTIFICATE OF TRIAL ATTORNEY**

_____/
Defendant.

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of counts _____

**Court Division** (select one)
☐ Miami   ☐ Key West   ☐ FTP
☐ FTL     ☒ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.
3. Interpreter: (Yes or No) No
   List language and/or dialect: _____
4. This case will take 0 days for the parties to try.
5. Please check appropriate category and type of offense listed below:

   (Check only one)
   I   ☒ 0 to 5 days
   II  ☐ 6 to 10 days
   III ☐ 11 to 20 days
   IV  ☐ 21 to 60 days
   V   ☐ 61 days and over

   (Check only one)
   ☐ Petty
   ☐ Minor
   ☐ Misdemeanor
   ☒ Felony

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Magistrate Case No. _____
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No
15. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No

By: _____
ANDREA SAVDIE
DOJ Trial Attorney
Court ID No. A5502799

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** ANTHONY VESPUCCI

**Case No:** _____

Count #: 1

Title 18, United States Code, Section 1349

Conspiracy to Commit Health Care Fraud
* Max. Term of Imprisonment:   10 years
* Mandatory Min. Term of Imprisonment (if applicable):   N/A
* Max. Supervised Release:   3 years
* Max. Fine:   $250,000 or twice the gross gain or loss resulting from the offense

*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. |
| | ) | |
| Anthony Vespucci, | ) | **24-80006-CR-MARRA/MCCABE** |
| *Defendant* | ) | |

**WAIVER OF AN INDICTMENT**

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*